UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-20373-CV-GAYLES/TORRES

LUZ ROSARIO SANTOS CASTRO,

    *Plaintiff,*

v.

CARNIVAL CORPORATION,

    *Defendant.*

_____/

**ORDER ON MOTION TO EXCLUDE EXPERT WITNESSES**

This matter is before the Court on Plaintiff's *Daubert* motion to exclude Defendant's experts Dr. Nure Khoury, MD and Dr. Jerome Poliacoff, PhD. [D.E. 61]. Defendant responded in opposition to the motion on May 24, 2022 [D.E. 68] to which Plaintiff replied on May 31, 2022 [D.E. 78]. Therefore, the *Daubert* motion is now ripe for disposition. After careful consideration of the motion, response, reply, relevant authorities, and for the reasons discussed below, Plaintiff's *Daubert* motion is **DENIED.**

## I.   BACKGROUND

On March 14, 2020, while Plaintiff was aboard Defendant's cruise ship, the Carnival *Magic*, she visited the medical center onboard because she was experiencing an allergic reaction. [D.E. 1]. Plaintiff was triaged and then intravenously treated with medication to neutralize her allergy. [D.E. 61-1 at 2]. While at the medical center, Plaintiff asked for a blanket and the ship's nurse brought her one and tucked her in. [D.E. 1]. Later, Plaintiff stretched her legs and was pricked by a needle that had been hidden by the blanket. *Id.* The needle penetrated Plaintiff's big toe of her left foot. *Id.* The doctor then sent Plaintiff back to her cabin. *Id.* Later that day, she was called back to the medical center for treatment for the accidental needle prick. *Id.* Back at the medical center, Plaintiff was tested and received treatment for conditions that include AIDS/HIV, hepatitis B, and tetanus/diphtheria. *Id.*

Plaintiff now sues Defendant for negligence and negligent infliction of emotional distress. During this litigation, Defendants disclosed Dr. Khoury and Dr. Poliacoff as her expert witnesses. Plaintiff now moves to exclude them both. [D.E. 61].

## II. APPLICABLE PRINCIPLES AND LAW

The decision to admit or exclude expert testimony is within the trial court's discretion and the court enjoys "considerable leeway" when determining the admissibility of this testimony. *See Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005). As explained in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the admissibility of expert testimony is governed by Fed. R. Evid. 702. The party offering the expert testimony carries the burden of laying the proper

foundation for its admission, and admissibility must be shown by a preponderance of the evidence.[1] *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999); *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) ("The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion, whether the proponent is the plaintiff or the defendant in a civil suit, or the government or the accused in a criminal case.").

"Under Rule 702 and *Daubert*, district courts must act as 'gate keepers' which admit expert testimony only if it is both reliable and relevant." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (citing *Daubert*, 509 U.S. at 589). The purpose of this role is "to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). Also, in its role as gatekeeper, a court's duty is not to make ultimate conclusions as to the persuasiveness of the proffered evidence. *See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).

---

[1] Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

To facilitate this process, district courts engage in a three-part inquiry to determine the admissibility of expert testimony:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa v. Harcros Chems.*, 158 F.3d 548, 562 (11th Cir. 1998) (citations omitted). The Eleventh Circuit refers to the aforementioned requirements as the "qualification," "reliability," and "helpfulness" prongs and while they "remain distinct concepts"; "the courts must take care not to conflate them." *Frazier*, 387 F.3d at 1260 (citing *Quiet Tech*, 326 F.3d at 1341).

In determining the reliability of a scientific expert opinion, the Eleventh Circuit also considers the following factors to the extent possible:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. Notably, however, these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis.

*Quiet Tech*, 326 F.3d at 1341 (citations omitted). The aforementioned factors are not "a definitive checklist or test," *Daubert*, 509 U.S. at 593, but are "applied in case-specific evidentiary circumstances," *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005). While this inquiry is flexible, the Court must focus "solely on principles and methodology, not on conclusions that they generate." *Daubert*, 509

4

U.S. at 594-95. It is also important to note that a "district court's gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the jury.'" *Quiet Tech*, 326 F.3d at 1341 (quoting *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking but admissible evidence." *Daubert*, 509 U.S. at 580; *see also Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1306 (11th Cir. 2014) ("As gatekeeper for the expert evidence presented to the jury, the judge 'must do a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'") (quoting *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010)).

"[T]he objective of [the gatekeeping role] is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). The district court's role is especially significant since the expert's opinion "can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert,* 509 U.S. at 595 (quoting Jack B. Weinstein, *Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended,* 138 F.R.D. 631, 632 (1991)).

### III. ANALYSIS

Plaintiff seeks to exclude Dr. Poliacoff on the bases that he is not qualified to render an opinion in this case and that his opinions lack any cognizable methodology. Although Dr. Khoury's qualifications as an expert here are unchallenged, Plaintiff also seeks to exclude Dr. Khoury, alleging that three of his opinions are not supported by a reliable methodology. Additionally, Plaintiff contends that both experts should be excluded because their opinions will not be helpful to the trier of fact.

#### A. *Dr. Poliacoff is a Qualified Expert.*

Dr. Poliacoff is a licensed psychologist who received bachelor's degrees in psychology and economics and counseling psychology. [D.E. 61-6]. He also received his doctorate degree in counseling and clinical psychology. *Id.* He has been licensed as a psychologist by the State of Florida since 1984, and has been practicing child, adolescent, adult, and forensic psychology since 1982. *Id.* He was certified by the Eleventh Judicial Circuit Guardian *Ad Litem* Program to act in family law cases. *Id.* Additionally, his curriculum vitae lists many other experiences, publications, presentations, and continuing education in the field of psychology. *Id.*

Dr. Poliacoff's background and practical experience qualify as "specialized knowledge" gained through "experience, training, or education." Fed. R. Evid. 702. Additionally, because Plaintiff alleges damages that relate to her psychological well-being – inconvenience in the normal pursuits and pleasures of life, loss of enjoyment of life, feelings of economic insecurity, and mental and emotional anguish – Dr. Poliacoff's experience in psychology minimally fits the subject matter at issue. And

based on Dr. Poliacoff's extensive experience in the field of psychology plus his personal evaluation of the Plaintiff, this Court finds that Dr. Poliacoff is within his realm of expertise to opine on Plaintiff's psychological well-being, and the factors that may attribute to it. *See United States v. Rahm*, 993 F.2D 1405, 1412-13 (9th Cir. 1992) (holding that a psychologist was qualified to testify regarding defendant's mental state because the psychologist had a doctoral degree, her intended testimony related to psychological tests and evaluation, and any deficits in her qualifications beyond her professional training went to the weight of her testimony rather than to its admissibility); *Sims v. Medical Ctr.*, No. 1997 U.S. Dist. LEXIS 13163, at *4 (E.D. La. Aug. 21, 1997) ("Psychiatrists, psychologists, and other mental health professionals routinely testify as experts in criminal and civil cases in which the mental condition of an individual is an issue.").

Plaintiff argues that Dr. Poliacoff is not a qualified expert because he does not have experience specifically in the medical or legal fields, so he is not qualified to render the following opinions:

> As may be inferred from [Plaintiff's] reported medical and vocational history, any physical problems (e.g., "thoracic syndrome" and "carpal tunnel syndrome") are, related to injuries she sustained in the workplace. They are not reasonably related to, caused by, or exacerbated by, her treatment by Carnival's medical personnel (i.e., see her claim for "inconvenience in the normal pursuits and pleasures of life").
>
> Her activities of daily living (i.e., normal pursuits and pleasures of life), prior to the incidents alleged in her complaint were already restricted by virtue of her disability.
>
> It is my understanding, as a non-lawyer, that it has long been recognized by the courts that a claimant (like Ms. Santos) has a duty to mitigate his/her damages by (a) making reasonable efforts to avoid the losses

7

> arising as a result of the actions (or inactions) of the defendant, and (b) to take no unreasonable action which might exacerbate those losses[.]

[D.E. 61-5].

Plaintiff's argument fails because an expert only needs to be minimally qualified to testify and does not need to have extensive experience in the exact field or subject of their testimony. After a witness is found to be minimally qualified, challenges to the witness' qualifications attack the weight of his testimony and not its admissibility. *See In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 836 (3d Cir. 1990) (holding that, in light of Rule 702's liberal expert witness qualification standard, the trial court abused its discretion in excluding portions of expert witnesses' testimony on the grounds that they did not have education or training in specific areas); *Grantham v. CSX Transp., Inc.*, No. 2:19-cv-65, 2022 U.S. Dist. Lexis 89495, at *10 (S.D. Ga. Jan. 31, 2022) (citing *Maiz*, 253 F.3d at 665) ("An expert need not have experience precisely mirroring the case at bar."); *Andivar v. Carnival Corp.*, 550 F. Supp. 3d 1322, 1333 (S.D. Fla. 2021) ("There is no stringent requirement: so long as the expert is minimally qualified, objections go to the credibility and weight of the testimony, not its admissibility.") Additionally, although Dr. Poliacoff is not a medical doctor or psychiatrist, he is able to opine on the factors that may contribute to a person's mental state, including previous injuries or experiences. *See United States v. Finley*, 301 F.3d 1000, 1010 (9th Cir. 2002) (recognizing that a psychologist can provide expert testimony about his diagnosis of a mental disorder based on a variety of factors). Accordingly, Dr. Poliacoff is a minimally qualified expert. If Plaintiff seeks to juxtapose his testimony against her retained psychiatrist, and cross-

8

examine Dr. Poliacoff on this basis, that is her right at trial. But the broad-brush challenge raised here under *Daubert* is not persuasive.

### B. *Dr. Poliacoff's Method is Reliable.*

Dr. Poliacoff reviewed the Complaint, medical records from doctors who have previously treated Plaintiff, authoritative treatises, and Defendant's records from the incident aboard the cruise ship. [D.E. 61-5]. He also undertook an all-day psychological examination of Plaintiff and administered generally recognized psychological testing, including: the Minnesota Multiphaisic Personality Inventory, 2nd edition (MMPI-2); the Millon Clinical Multiaxial Inventory, 4th edition (MCMI-4); and the Millon Medical Behavioral Diagnostic (MBMD). *Id.* Dr. Poliacoff then wrote a report offering his opinions. [D.E. 61-5]. In his report, Dr. Poliacoff opined that:

> [P]articipation in an empirically based psychological treatment (i.e., EMDR15) . . . would serve to alleviate her self-reported anxieties.
> …
> It is my professional, and expert, opinion based on (a) my extended interview and testing of Ms. Santos, and (b) my review of the records made available to me, as well as (c) the research (i.e., authoritative treatises) as referenced in the body of this report that
> (i) It cannot be reasonably assumed, although Ms. Santos
> manifests symptoms of anxiety, that her condition is
> attributable to the alleged (in)actions of the defendant.
> (ii) It can be assumed that for the purposes of this evaluation
> Ms. Santos is likely malingering symptoms consistent with
> emotional distress.
> (iii) Ms. Santos has, IF she has symptoms that are not the consequence of malingering, an excellent prognosis in the right treatment modality.
> (iv) In light of the foregoing it is this examiner's opinion that Ms. Santos's alleged injuries if properly treated are neither permanent nor continuing, and therefore will not last into the future.

*Id.*

Dr. Poliacoff's methodology satisfies *Daubert*. *See Hose v. Chi. Nw. Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1995) ("Only if an expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded."). Here, Dr. Poliacoff relied on generally accepted psychological tests to personally evaluate Plaintiff, referenced psychological research from authoritative treatises, read Plaintiff's medical records, and utilized his knowledge from previous professional experiences. [D.E. 61-5]. Because Dr. Poliacoff's method for forming opinions about Plaintiff's mental state is consistent with generally accepted practices and research, and he personally evaluated Plaintiff, his method is sufficiently reliable. *See Finley*, 301 F.3d at 1009 (holding that a psychologist's method for evaluating the defendant was reliable where the psychologist relied on accepted psychological tests, from which he made sound inferences, took a thorough patient history, met with the defendant's wife, and observed the defendant's behavior); *United States v. Lopez-Hodgson*, 333 F. App'x 347, 354 (10th Cir. 2009) (affirming the district court's holding that a forensic psychologist's method for evaluating the defendant was reliable where the psychologist spoke with and observed the defendant, discussed the defendant with other staff members and the defendant's attorney, considered the defendant's IQ scores, and conducted his own psychological testing).

Plaintiff argues that Dr. Poliacoff's method is unreliable because he based his opinions on only two core facts, (1) that Plaintiff sought mental health assistance only after her complaint was filed, and that assistance (2) amounted to three sessions with

a mental health professional. Plaintiff also challenged Dr. Poliacoff's methodology because there was no objective standard that Dr. Poliacoff sought to hold Plaintiff to, such as a minimum length of time after an incident occurs in which he believes Plaintiff should have started seeing a mental health provider, or a minimum number of hours Plaintiff was required to spend with such a provider.

Plaintiff's assertion that Dr. Poliacoff only based his opinions on two facts is misleading, as the entire record shows that Dr. Poliacoff referenced many different credible sources, and even evaluated Plaintiff himself, before forming his opinions. [D.E. 61-5]. So contrary to Plaintiff's challenge, Dr. Poliacoff's opinions are based on a comprehensive review of the record and all relevant materials, not only two facts. Additionally, the Court's focus when determining whether or not to exclude an expert is solely on the methodology by which the expert forms his opinions, and not the conclusions the expert generates. Therefore, a finding that Dr. Poliacoff utilized a reliable method to form his opinions renders an inquiry into specifics about what he did not include in his report irrelevant. *See Daubert*, 509 U.S. at 594-95 (the inquiry into whether an expert's methodology is reliable is, "a flexible one, and its focus must be solely on principles and methodology, not on the conclusions that they generate."). Dr. Poliacoff cannot be excluded as a witness, and his methodology discarded as unreliable, simply because he did not include specifics about what he believes is the appropriate amount of time after an incident occurs to see a mental health provider, or how many hours someone should spend with one. Plaintiff's argument for wholesale exclusion of this testimony is not merited. *See, e.g., Salvani v. Corizon*

11

*Health, Inc.*, 2019 WL 4038517, at *4 (S.D. Fla. Aug. 27, 2019) (denying defendant's *Daubert* motion to exclude plaintiff's medical witnesses where "a plethora of facts and data [existed] to support Dr. Kern's conclusion that substandard care was, in part, the cause of Plaintiff's complications. Dr. Kern reviewed, for instance, the medical records of Wexford's healthcare providers, the underlying laboratory reports, Plaintiff's vital signs, blood tests, x-rays, and other physical examinations.").

### C. *Dr. Khoury's Method is Reliable.*

Defendant seeks to call Dr. Khoury as an expert at trial to defend against the claim that the ship's medical staff were negligent in their handling of Plaintiff's care. To form his expert opinion, Dr. Khoury reviewed Plaintiff's answers to interrogatories, Plaintiff's medical records from onboard the cruise ship, the depositions of medical staff involved in Plaintiff's care and Defendant's corporate representative, Plaintiff's post-exposure medical treatment records, and other materials. [D.E. 70-4]. After reviewing the relevant documents, Dr. Khoury utilized his experience and knowledge about cruise ship medicine and opined that the medical crew that treated Plaintiff aboard the cruise ship complied with the standard of care. *Id.* Specifically, he opines that, since Plaintiff arrived at the medical center with an acute condition, the physicians and staff treating her complied with the standard of care by prioritizing her stabilization and treatment over safety precautions like discarding of a used needle. *Id.*

Dr. Khoury's expert report reflects that he had a reliable basis to assert that the standard of care called for the physicians that were treating Plaintiff to prioritize

12

her treatment over safety precautions. Dr. Khoury based that opinion on his background and understanding of shipboard medicine practices that he gained from working multiple different roles in maritime medicine, along with his review of the record and relevant materials. [D.E.70-4]. The Supreme Court has recognized that a district court has "broad latitude" to allow an expert whose testimony is based on "professional studies or personal experience." *Kumho Tire Co., Ltd.*, 526 U.S. at 152. Therefore, Dr. Khoury's method for forming an opinion on the standard of care here is minimally reliable. *See Adams v. Lab. Corp. of Am.*, 760 F.3d 1322, 1340 (11th Cir. 2014) (recognizing that courts of appeals applying Rule 702 and *Daubert* to standard-of-care expert testimony have determined that the testimony in question is admissible so long as the expert is competent or qualified); *Kovaly v. Wal-Mart Stores Tex., L.L.C.*, 627 F. App'x 288, 291 (5th Cir. 2015) (holding that an experienced pharmacist had a reliable basis to testify as to the standard of care for pharmacists where he based his opinion on his background and understanding of pharmacy practice and on state regulations).

Plaintiff argues that Dr. Khoury's opinion that "it is apparent that the needle in question came from no other source than the plaintiff herself" is unsupported by any analysis, methodology, or fact, because the shipboard medical physicians were not as certain where the needle came from. This argument is belied by the record where the nurse that treated Plaintiff onboard the cruise ship testified that the needle was definitely Plaintiff's own needle. [D.E. 70-1]. The record also indicates that the nurse did not recall discarding Plaintiff's needle, Plaintiff was the only

13

patient treated that evening in the medical center, and the bed and vicinity where Plaintiff was treated is cleaned after each new patient. Therefore, Dr. Khoury's opinion was not contradicted by the record as Plaintiff submits.

Plaintiff isolated several other opinions from Dr. Khoury's report and argued that they similarly lacked any cognizable methodology; however, the Court's analysis here focuses on whether the expert utilized a reliable methodology to formulate his opinions in general, and not on the individual conclusions generated from said methodology. *Daubert*, 509 U.S. at 594-95. Plaintiff can obviously cross-examine Dr. Khoury and seek to undermine the conclusions he reached at trial. Plaintiff's challenge more properly focuses on the weight the jury should ascribe to the expert's opinions rather than their admissibility. *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562-63 (5th Cir. 2004) (questions relating to the bases and sources of an expert's opinion generally go to the weight of that opinion rather than its admissibility). Rule 702 and *Daubert* counsel a liberal approach to the admission of expert testimony on scientific matters. *Id.* That liberal approach strongly counsels against granting Plaintiff's motion as to Dr. Khoury's opinions. *See also Banta Properties, Inc. v. Arch Specialty Ins. Co.*, 2011 WL 13096149, at *4 (S.D. Fla. Dec. 20, 2011) (even if one source of expert's was imperfect, exclusion not warranted where "expert's method need not be perfect, nor need he apply it perfectly.)" (citing *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, 2011 WL 2295269, at *5-6 (S.D. Fla. June 8, 2011)) (noting that a rebuttal expert could testify to the flaws in a report based on imperfect data or imperfect methodology).

### D.     Drs. Poliacoff and Khoury's Opinions Are Sufficiently Helpful

Finally, Plaintiff argues that the testimony of these two experts will not be helpful to the trier of fact in this case. This argument is also not persuasive. Because Plaintiff claims emotional damages that allegedly occurred as a result of the shipboard medical staff breaching their standard of care, the testimony of an experienced psychologist and a seasoned cruise ship physician may be important and relevant here. Additionally, because an average lay person cannot evaluate Plaintiff's mental state themselves, or expertly analyze her medical records, and because they generally do not have knowledge about the standard of care of medical centers aboard cruise ships, the testimony of these two experts will assist the trier of fact. *Frazier*, 387 F.3d at 1262 (11th Cir. 2004) (holding that expert testimony is admissible under the helpfulness requirement of Rule 702 if it concerns matters that are beyond the understanding of the average lay person); *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985) (expert testimony is admissible if it offers something "beyond the understanding and experience of the average citizen.").

Accordingly, the motion to exclude Dr. Poliacoff and Dr. Khoury is **DENIED** because there is nothing under *Daubert* that would justify the exclusion of these experts.

### IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's *Daubert* motion [D.E. 61] to exclude Defendant's expert witnesses is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 11th day of July, 2022.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge